# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### NORTHERN DIVISION

BALTIMORE COUNTY, MARYLAND
a body corporate and politic
400 Washington Avenue
Towson, Maryland 21204

                       Plaintiff,

     v.

PRICELINE.COM, INC.
c/o Corporation Service Company
2711 Centerville Rd.
Suite 400
Wilmington, DE 19808

LOWESTFARE.COM, INC.
c/o Corporation Service Company
2711 Centerville Rd.
Suite 400
Wilmington, DE 19808

TRAVELWEB, LLC
c/o Corporation Service Company
2711 Centerville Rd.
Suite 400
Wilmington, DE 19808

TRAVELPORT, INC. (f/k/a CENDANT TRAVEL
DISTRIBUTION SERVICES GROUP, INC.)
c/o Corporation Service Company
2711 Centerville Rd.
Suite 400
Wilmington, DE 19808

CHEAPTICKETS, INC.
c/o Corporation Service Company
2711 Centerville Rd.
Suite 400
Wilmington, DE 19808

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2010 MAY -3  P 1: 07

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

Case No.:  New Matter

COMPLAINT **MJG 10 CV 1 1 0 4**

TRIP NETWORK, INC.
c/o Corporation Service Company
2711 Centerville Rd.
Suite 400
Wilmington, DE 19808

ORBITZ, INC.
c/o Corporation Service Company
2711 Centerville Rd.
Suite 400
Wilmington, DE 19808

ORBITZ, LLC
c/o Corporation Service Company
2711 Centerville Rd.
Suite 400
Wilmington, DE 19808

EXPEDIA, INC.
c/o National Registered Agents, Inc.
160 Greentree Dr.
Suite 101
Dover, DE 19904

EXPEDIA, INC.
c/o National Registered Agents, Inc.
1780 Barnes Blvd, SW
Building G
Tumwater, WA 98512-0410

HOTELS.COM
c/o National Registered Agents, Inc.
160 Greentree Dr.
Suite 101
Dover, DE 19904

HOTELS.COM, L.P.
10440 N. Central Expwy
Ste. 400
Dallas, TX 75231

HOTELS.COM GP, LLC

c/o/ National Registered Agents, Inc.
16055 Space Center
Suite 235
Houston, TX 77062

HOTWIRE, INC.
c/o National Registered Agents, Inc.
160 Greentree Dr.
Suite 101
Dover, DE 19904

TRAVELNOW.COM, INC.
c/o National Registered Agents, Inc.
160 Greentree Dr.
Suite 101
Dover, DE 19904

SABRE HOLDINGS CORPORATION
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

TRAVELOCITY.COM, INC.
c/o Corporation Service Company
2711 Centerville Rd.
Suite 400
Wilmington, DE 19808

TRAVELOCITY.COM, LP
c/o Corporation Service Company
2711 Centerville Rd.
Suite 400
Wilmington, DE 19808

SITE59.COM, LLC,
c/o Corporation Service Company
2711 Centerville Rd.
Suite 400
Wilmington, DE 19808

and DOES 1 THROUGH 1000, INCLUSIVE.

Defendants.

### COMPLAINT

Plaintiff, a corporation and political subdivision of the State of Maryland (hereinafter "Plaintiff" or "Baltimore County") with its principal place of business at 400 Washington Avenue, Towson, Maryland 21204, brings this action as authorized by the Baltimore County Council, and alleges as and for its Complaint against the Defendants (as defined below), upon personal knowledge as to itself and its own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by the County and its attorneys, as follows:

### I. INTRODUCTION

1.     This Action is one of central importance to the Baltimore County and to the integrity of the Maryland Tax Code generally.  This Action seeks to address what Baltimore County deems to be a direct and intentional violation and evasion of the Baltimore County Code, specifically the "Transient Occupancy Tax" section and Maryland law.  This action is brought, in part, pursuant to Maryland Code ("MD Code") Article 24, § 9-704 which provides: ". . . an action to collect tax imposed under this article may be brought in a court of competent jurisdiction." MD Code § 9-705 of Article 24 further provides that "If a tax under this article is not paid when due, the tax collector shall ask the attorney or solicitor for the county or municipal corporation to bring an action against the person responsible to pay the tax. . . . In an action under this section, the plaintiff shall be . . . [t]he municipal corporation."

2.     Given the importance of governmental tax revenues, actions to collect such monies are given special priority under Maryland law.  Specifically, MD Code Article 24, § 9-707 requires that: "If the plaintiff in an action under § 9-705 of this subtitle requests, **the action**

**shall be tried as soon as the action is at issue and shall take precedence over all other civil cases**." (Emphasis added)

3.      This Action is brought by Baltimore County in its capacity as a taxing authority against Defendants for their past and continuing failure to remit transient occupancy taxes (the "Transient Occupancy Taxes" or "Occupancy Taxes") imposed under Title 4, Subtitle 4 of the Baltimore County Code. Specifically, § 11-4-402 imposes an occupancy tax on the transient guest for sleeping accommodations: "(a)     *Levied and imposed.* In accordance with the authority granted under § 11-1-102 of this article, there is levied and imposed a transient occupancy tax **on the room rental paid by a transient** for sleeping accommodations." (Emphasis added). This tax is expressly on the transient, and not on the hotel.

Section 11-4-402 (b) sets the tax rate at 8% and directs that the taxes be collected: "[t]he transient occupancy tax rate is **8% of the room rental paid by a transient**." "Room rental" is expressly defined and "means the **total charge** made for any sleeping accommodation furnished **to a transient**." Baltimore County Code § 11-4-401. (Emphasis added). The taxes collected are supposed "to be made a part of the general funds of the county." Baltimore County Code § 11-4-402. Section 11-4-403 provides that "[a]t the time payment for a room rental is made, **a person receiving payment** for the room rental shall collect the amount of the transient occupancy tax from the transient on whom the tax is levied or from the person paying for the room rental." (Emphasis added). The Defendants receive payments for room rentals and, thus, are duty-bound to collect and remit taxes on the "total charges" paid by the Baltimore County's transient guests.

Even if Baltimore County's Code directly taxed "innkeepers" or hotel "operators" rather than the transient guests, which is not the case, Defendants would still be liable.  The State of

Maryland Business Regulation Code defines "innkeepers" broadly as "the owner operator, manager, or keeper of a lodging establishment, **or the agent** of an owner, operator, manager, or keeper of a lodging establishment." (Emphasis added). Maryland Business Regulation Code § 15-201. That same code section expressly includes "hotels" within the definition of "lodging establishments."

Defendants contract with hotels so that they can exclusively collect such taxes.[1] The Supreme Court of Georgia, affirming the trial court, held that:

> . . . as a *matter of fact*, Expedia contracted with City Hotels and bargained for the right to receive the customer's tax payment on the hotel's behalf whenever the customer reserved a hotel room on Expedia's website. . . . Our review of the [factual] record confirms that Expedia does in fact collect monies earmarked for the payment of the customer's hotel taxes, . . . by virtue of Expedia's private agreements with City hotels.

*Expedia, Inc. v. City of Columbus*, 285 Ga. 684, 690 (June 15, 2009).[2] Thus, in addition to their direct liability, Defendants are liable as agents of hotels and innkeepers for the purposes of charging and collecting taxes from transient guests.

4.      In sum, Defendants contract with the hotels to arrange for the rental of hotel rooms to others and/or acquire hotel rooms for subsequent rentals to others. Defendants conduct the business of acquiring and then renting hotel rooms through a two-step process: first, they acquire hotel rooms from hotels at low **wholesale** rates; second, Defendants rent the rooms arranged or acquired for rental to consumers (transient guests) at higher **retail** rates. By the terms of the Baltimore County Code, Defendants are required to collect and remit the 8.0% Occupancy Tax for the **total retail** rental paid by the transient guest. Although Defendants

---

[1] "Expedia provides in its contracts with hotels that it 'shall collect all applicable taxes from consumers.'" *Expedia, Inc. v. City of Columbus*, 285 Ga. 684, 684 (June 15, 2009).

[2] "Hotels.com provides in its contracts with hotels that it 'shall collect all applicable taxes from its customers.'" *Hotels.com v. City of Columbus*, 286 Ga. 130, 130 (October 5, 2009).

charge consumers the Occupancy Tax based on the higher retail rate (or more), *Defendants do not remit any Occupancy Tax directly to Baltimore County and only a portion of the Occupancy Tax is ever paid to Baltimore County.*[3]

5.       Defendants' acts of tax evasion give rise to the County's claims herein for: (1) Declaratory Judgment and Injunctive Relief; (2) Violation of § 11-1-101 *et seq.* of the Baltimore County Code; (3) Conversion; (4) Unjust Enrichment / Assumpsit; and (5) Imposition of a Constructive Trust.

## II. PARTIES

6.       Plaintiff Baltimore County is a political subdivision of the State of Maryland and a taxing authority empowered to levy excises on all vendors of hotel accommodations within its jurisdiction.

7.       Defendants can be grouped into four distinct groups, as subsidiaries or indirect subsidiaries of either: A) Priceline; B) Cendant Corporation; C) Expedia, Inc.; or D) Sabre Holdings.

**A.       The Priceline Defendants**

8.       *Defendant Priceline.com, Inc.* ("Priceline") is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

---

[3] A portion of the Occupancy Tax is paid when, in the first step of the transaction, the hotel receives and remits to Baltimore County 8 % of the wholesale amount charged to Defendants. In the second step of the transaction, Defendants collect from consumers the entire Occupancy Room Tax – that is, 8 % of the entire retail amount – but make no further remittance of taxes to Baltimore County. For instance, if a Defendant acquires a room from a hotel for the wholesale rate of $100, the hotel receives and remits the 8 % Occupancy Tax ($8.00) on the wholesale rate to the City. If the Defendant rents that room to a consumer for $200, the Defendant collects the 8 % Occupancy Tax ($16) on the retail rate from the consumer, but remits no additional amount to Baltimore County. The Baltimore County Code is clear, however, that the Occupancy Tax of 8 % is to be collected on "the **total charge** made for any sleeping accommodation furnished **to a transient**." Baltimore County Code § 11-4-401. (Emphasis added).

9.      *Defendant Lowestfare.com, Inc.* ("Lowestfare") is a Delaware corporation with its principal place of business in Norwalk, Connecticut.  Defendant Lowestfare.com is a wholly-owned subsidiary of Defendant Priceline.

10.     *Defendant Travelweb, LLC.* ("Travelweb") is a Delaware corporation with its principal place of business in Dallas, Texas.  Defendant Travelweb is a wholly-owned subsidiary of Defendant Lowestfare.

**B.      The Cendant Defendants**

11.     *Defendant Travelport, Inc.* ("Travelport") is a Delaware corporation with its principal place of business in Parsippany, New Jersey.  Defendant Travelport is a subsidiary of Cendant Corporation.   Defendant Travelport was formerly known as *Cendant Travel Distribution Services Group, Inc.*.

12.     *Defendant Cheaptickets, Inc.* is a Delaware corporation with its principal place of business in Honolulu, Hawaii.  Defendant Cheaptickets.com, Inc. is an indirect subsidiary of Cendant Corporation.

13.     *Defendant Trip Network, Inc.* (d/b/a Cheaptickets.com) is a Delaware corporation with its principal place of business in Honolulu, Hawaii.  Defendant Trip Network, Inc. is an indirect subsidiary of Cendant Corporation.

14.     *Defendant Orbitz, Inc.* is a Delaware corporation with its principal place of business in Chicago, Illinois.  Defendant Orbitz, Inc. is an indirect subsidiary of Cendant Corporation.

15.     *Defendant Orbitz, LLC.* is a Delaware corporation with its principal place of business in Chicago, Illinois.   Defendant Orbitz, LLC is an indirect subsidiary of Cendant Corporation.

**C.      The Expedia Defendants**

16.     *Defendant Expedia, Inc.* ("Expedia") is a Delaware corporation with its principal place of business in Bellevue, Washington.

17.     D*efendant Expedia, Inc.* ("Expedia (WA)") is a Washington corporation with its principal place of business in Bellevue, Washington.   Defendant Expedia is the parent corporation of Defendant Expedia (WA).

18.     *Defendant Hotels.com, Inc.* is a Delaware corporation with its principal place of business in Dallas, Texas.   Defendant Hotels.com, Inc. is a subsidiary of Defendant Expedia.

19.     *Defendant Hotels.com, L.P.* is a Delaware limited partnership with its principal place of business in Dallas, Texas.   Defendant Hotels.com, LP is a wholly-owned subsidiary of Defendant Hotels.com, Inc.

20.     *Defendant Hotels.com Gp, LLC.* is a Texas corporation with its principal place of business in Dallas, Texas.   Defendant Hotels.com, Gp, LLC is a wholly-owned subsidiary of Defendant Hotels.com, Inc.

21.     *Defendant Hotwire, Inc.* ("Hotwire") is a Delaware corporation with its principal place of business in San Francisco, California.   Defendant Expedia is the parent company of Defendant Hotwire.

22.     *Defendant TravelNow.com, Inc.* is a Delaware corporation, and a wholly-owned subsidiary of Defendant Hotels.com, Inc.

**D.     The Sabre Holdings Defendants**

23.     *Defendant Sabre Holdings Corporation* is a Delaware Corporation with its principal place of business in Texas.

24.     *Defendant Travelocity.com, Inc.* is a Delaware corporation with its principal place of business in Texas.   Defendant Travelocity.com, Inc. is an indirect subsidiary of Sabre Holdings Corporation.

25.     *Defendant Travelocity.com, LP.* is a Delaware limited partnership with its principal place of business in Texas.

26.     *Defendant Site59.com LLC* is a Delaware limited liability company with its headquarters in New York, New York.   Defendant Site59.com, LLC is an indirect subsidiary of Sabre Holdings Corporation, a Delaware Corporation.

27.     The true names and capacities, whether individual, corporate, associate or otherwise, of each of the Defendants designated herein as a DOE are unknown to Baltimore County at this time and therefore said Defendants are sued by such fictitious names.   Baltimore County will ask leave of the Court to amend this Complaint to show their true names and capacities when the same have been ascertained.   Baltimore County is informed and believes, and alleges, that each of the Defendants designated herein as a DOE is legally responsible in some manner (including under the laws of agency) and liable for the events and practices herein alleged and, as such, proximately caused damages to Baltimore County as hereinafter further alleged.

### III.  JURISDICTION AND VENUE

28.     All Defendants regularly transact business within the State of Maryland and the

claims asserted herein arise from their business conducted within this State. Defendants are thus

subject to the jurisdiction of this Court.

29.     This Court possesses subject matter jurisdiction of the claims asserted herein

pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship between Plaintiff

and Defendants and the amount in controversy exceeds the sum of $75,000.00 exclusive of

interest and costs.  Specifically, jurisdiction over this dispute and the Defendants is proper on the

following grounds: (i) all or a substantial part of the transactions and conduct giving rise to the

causes of action plead herein occurred in this Judicial District; (ii) all of the Defendants have

transacted – and continue to transact – substantial business within Baltimore County and possess

general contacts with this jurisdiction; and (iii) Defendants are residents of a different state than

Maryland.

30.     Venue is proper in this Court pursuant to U.S.C. §1391.  Venue is proper in this

Court because all or a substantial part of the transactions giving rise to the harms complained of

by Baltimore County occurred within Baltimore County and this Judicial District.

### IV.  SUBSTANTIVE ALLEGATIONS

**A. General Allegations**

31.     Defendants, each of them, are online sellers and/or online resellers and/or online

renters of hotel rooms to the general public.  Defendants sold and/or provided and/or rented hotel

rooms to the public, but failed to pay Occupancy Taxes due and owing to Baltimore County on

these transactions.

32.    Baltimore County's Occupancy Tax requires Defendants to collect and remit taxes on behalf of the county.

33.    The amount of the Occupancy Tax is correctly calculated as a percentage of the total amount each consumer occupant (the transient guest) pays each Defendant for a hotel room. That is the amount each Defendant is required to remit to Baltimore County.

34.    Defendants are liable to Baltimore County for said Occupancy Taxes whether they charge and collect said taxes from the ultimate occupier of the hotel room or not.

35.    Upon information and belief, Defendants are charging and collecting Occupancy Taxes from consumers that are not being remitted to Baltimore County. The Occupancy Tax is paid by the consumer occupants to Defendants and collected on behalf of Baltimore County by the Defendants.

36.    Defendants contract with hotels for rooms at negotiated discounted room rates. Defendants then mark up their inventory of rooms and rent the rooms to members of the public (consumers or transient guests), who actually occupy the rooms. Upon information and belief, Defendants charge and "actually collect" Occupancy Taxes from occupants based on the marked up room rates, but Baltimore County only receives Occupancy Tax monies based on the lower, negotiated room rates. Each Defendant then pockets the difference.

37.    For example, if a consumer pays Expedia.com $100.00 for a room in a hotel located in Baltimore County, Maryland, Expedia.com calculates the Occupancy Tax amount the consumer pays on that "gross amount" ($100.00). Expedia.com, however, obtains that room at a lower "net" rate, for instance, $60.00. Because Expedia.com and other Defendants act as retailers rather than agents, the amount of Occupancy Tax due is 8 % of $100 or $8.00.

However, the amount of Occupancy Tax remitted to Baltimore County by Defendants has been and is based on the lower "net" rate. In this example, Baltimore County would only receive $4.80 (8 % of $60.00), an underpayment of the Occupancy Tax liability by $3.20. Thus, in this single example transaction, Baltimore County's collected Occupancy Tax would be 40% less than the collected and proper Occupancy Tax.

38.     Defendants have failed and continue to fail to remit the full Occupancy Taxes due and owing to Baltimore County.

39.     Defendants' business practices include charging the general public (transient guest) a "taxes and services" fee on the rental of each hotel room. The general public is led to believe Defendants are remitting the correct amount of Occupancy Tax to Baltimore County. Defendants, however, are calculating the Occupancy Tax liability of the general public (and Defendants) based upon the amount Defendants paid the hotel for the room, not upon the gross amount the general public paid Defendants. As a result, the Occupancy Tax liabilities paid by the general public and owed to Baltimore County are underpaid/unpaid by the Defendants and Defendants unlawfully pocket the difference, which deprives Baltimore County the amount due and owing to it from the rental of each hotel room. In short, Defendants collect a greater amount in Occupancy Taxes from the general public than is remitted to Baltimore County.

40.     In addition to failing to properly pay collected or owed Occupancy Taxes, Defendants do not delineate to the general public the amount being paid for the Occupancy Tax and the amount, if any, being paid separately as "service fees." Defendants require that the hotels not reveal to the general public what Defendants paid for the hotel room. Likewise, the hotels do not know what the general public paid Defendants for the hotel room. The only way

for the hotel to pay the correct Occupancy Tax to Baltimore County is if Defendants inform the hotel the gross amount for which the hotel room was actually rented to the consumer by Defendants and to submit to the hotel the additional Occupancy Tax owed to Baltimore County (and which was actually paid by the consumer to Defendants).

**B. Defendants' Statements Regarding The "Merchant Model"**

41.    In recent years, the internet travel industry has seen explosive growth.  By some estimates, more than half of all hotel bookings in the United States are made online, many through internet travel companies owned by the Defendants.  Through their web portals, the Defendants allow consumers to rent hotel rooms in many different hotels throughout the country and the world.  The Defendants offer their services to hotels and consumers through two different business models:  the "Agency Model" and the "Merchant Model."[4]  Upon information and belief, the Merchant Model to represents a majority of total online bookings through the Defendants' internet travel sites.

42.    Under the Merchant Model, the Defendants do not function merely as service providers collecting a fixed transaction fee.  Rather, the Merchant Model consists of two independent but related transactions whereby an internet travel company, including each of Defendants:  (i) first purchases and takes title to inventories of hotel rooms at negotiated rates from the hotels ("wholesale" rates); and (ii) then re-sells the rooms to consumers at higher rates ("retail" rates), keeping the difference as profit.  The Defendants purchase rooms from hotels at the lower wholesale rate using their own credit cards.  The selling hotels collect and remit to the

---

[4] The two models are described in the 2002 annual report of Defendant Expedia, Inc. as filed with the Securities and Exchange Commission on Form 10-K on March 31, 2003, and the 2004 Annual Report on Form 10-K as filed with the SEC of IAC/Interactive Corp. (the parent company – at that time – of Expedia.com, Hotwire.com and Hotels.com), p. 9.

applicable taxing authority hotel room taxes based on that lower wholesale rate. The Defendants

then rent hotel rooms to consumers at a higher retail rate; the consumers pay through a credit

card transaction in which the particular Defendant is the merchant of record. In their transactions

with consumers, the Defendants charge the applicable hotel room tax, but do not remit any such

taxes to the taxing authority. These merchant transactions were described in public filings by

Expedia as follows:

> Under the merchant model, **we receive inventory** (hotel rooms, airline seats, car
> rentals, destination services) from suppliers at negotiated rates. We determine the
> retail price paid by the customer and **we then process the transactions as the
> merchant of record for the transaction**. Acting as a merchant enables us to
> achieve a higher level of gross profit per transaction compared to the agency
> model and allows us to provide better prices to customers compared to agency
> transactions. Merchant transactions comprised 58% of our total revenues in 2002
> and are derived from the difference between what we pay for the inventory and
> what we charge the customer. (Emphasis added.)[5]

43.     Similarly, Priceline.com specifically admitted that it actually "purchases" and

"takes title" to hotel rooms before reselling them to end users:

> For most of these transactions, we establish the price we will accept, have total
> discretion in supplier selection, **purchase and take title to the particular
> product and are the merchant of record**. Consumers agree to hold their offers
> open for a specified period of time to enable us to fulfill their offers from
> inventory provided by participating sellers. Once fulfilled, offers generally cannot
> be canceled. (Emphasis added.)[6]

44.     Hotels.com also identified itself as a "reseller" of hotel rooms obtained from the

hotels:

---

[5] 2002 annual report of Expedia, Inc. as filed with the SEC on Form 10-K on March 31, 2003.
[6] Priceline.com annual report for the year ending Dec. 31, 2002 on Form 10-K as filed with the SEC on March 15, 2003, p. 5.

We contract with hotels and other lodging properties in advance for volume purchases and guaranteed availability of rooms at wholesale prices **and resell these rooms to consumers** through our websites, third-party affiliated websites and our toll-free call centers. (Emphasis added.)[7]

45.     Similarly, Orbitz admitted that it "receive[s] inventory directly from a hotel" that it "then mark[s]-up and sell[s] to consumers:"

Our hotel agreements include . . . merchant hotel contracts with certain hotels, hotel management groups and hotel chains that give us access to discounted negotiated rates **that we then mark-up and sell to consumers on a prepaid basis**.

\*     \*     \*

Our strategy calls for us to increase the number of hotel rooms we can offer under our Orbitz Merchant Hotel program based on merchant arrangements we make directly with individual hotel properties and independent chains. Under the Orbitz Merchant Hotel program, **we receive inventory directly from a hotel at a negotiated rate, and we determine the retail price at which we choose to offer it to the consumer**.

\*     \*     \*

**We must also pay net rates to hotels in the event merchant hotel bookings sold on our website are purchased fraudulently**. (Emphasis added).[8]

This provision demonstrates that Defendant Orbitz did assume the risk of loss in certain of these sale transactions.

46.     Likewise, Travelocity, Inc. also distinguished its purchase and re-sale transactions under the Merchant Model from those where it merely provided a service:

---

[7] 2000 Annual Report of Hotel Reservations Network, Inc. (later renamed Hotels.com) filed on Form 10-K with the SEC on April 2, 2001, p.18.
[8] 2003 annual report of Orbitz, Inc. as filed with the SEC on Form 10-K on March 18, 2004, pp. 11, 28, 73.

In order to increase its sales of higher margin products, Travelocity's business plan calls for it to increase **merchant model sales** pursuant to which **Travelocity serves as the merchant of record in the transaction rather than as a sales agent**. In the merchant business, suppliers make inventory, such as airline seats, hotel rooms, car rentals, cruises, and vacation packages, available to Travelocity at wholesale or "net" rates. The merchant of record then sets the retail price that the customer pays and processes the transaction. **The merchant business generally delivers higher revenue per transaction than comparable sales under the agency model, in which Travelocity acts as an agent in the transaction, passing a customer's reservation to the travel supplier and receiving a commission from the supplier for its services**. (Emphasis added.)[9]

47.     As Defendants have admitted in these sworn public filings, Defendants collect the hotel rental charges from consumers.

48.     Defendants all employ the Merchant Model.  The Defendants have specifically solicited and marketed Baltimore County hotels and hotel rooms, and specifically have rented hotel rooms located in Baltimore County.  In the course of their hotel room rental business involving hotel rooms physically located in Baltimore County, the Defendants' employees and/or agents have travelled to Baltimore County and conducted on-site meetings, inspections and evaluations of hotels and guest rooms physically located in Baltimore.  In addition, Defendants have conducted significant business in Baltimore County via hundreds, if not thousands, of facsimiles, emails, and telephone calls to and from Baltimore County and Maryland locations. The Defendants have sold or rented hotel rooms to Maryland residents.   The Travelocity Defendants have an employee and an office physically located in Maryland.   The Priceline Defendants have and/or have had an employee and an office physically located in Maryland. The Orbitz Defendants have employees who work from their homes which are physically located in Maryland.

---

[9] 2001 annual report of Travelocity.com, Inc., as filed with the SEC on March 26, 2002, p.6

49.     By using this business model to acquire title to large blocks of hotel rooms, Defendants are able to negotiate a lower, "wholesale" purchase or lease price from the hotels. Defendants then re-sell or re-lease the hotel rooms to consumers at a substantially higher "retail" rate. This purchase and re-sale "Merchant" business model is far more profitable for the Defendants, and has become their dominant business paradigm in recent years.

## V. CAUSES OF ACTION
## COUNT I: DECLARATORY JUDGMENT
### (Against All Defendants)

50.     Baltimore County incorporates each of the above allegations by reference as if fully rewritten herein.

51.     Title 9 of the Maryland Code provides for "Revenue and Taxation." Article 24, Section 9-309 of that Title requires that hotel guests or transients be given a bill that "identifies the transient charge as a separate item from any other charge."

52.     Maryland Code Article 24, § 9-309 further provides that all hotel rental tax monies must be held "in trust" for the government entity that imposes the tax.

53.     Defendants have been collecting and continue to deceptively and unlawfully collect Occupancy Taxes at or above the retail rate while only paying Occupancy Taxes on wholesale rates. Defendants cannot hide an additional and illegal profit stream under the guise of "taxes and fees." The violations are simple and extremely harmful to Baltimore County's Tax Code and those who travel to or stay in Baltimore County. First, the intended transparency of Baltimore County's Occupancy Tax is being ignored and the law requiring individual itemization of taxes (separate from any other charges or fees) is being violated. Second, the tax dollars that should be flowing to Baltimore County for tourism development and other vital needs are being

diverted into Defendants' out-of-state coffers.

54.     All of the above outlined conduct is illegal and threatens the integrity of Baltimore County's Tax Code and tax laws more generally.  If this practice of collecting money as "taxes and fees" with no separate itemization and only partial payment persists, other businesses may decide to only pay Baltimore County taxes at wholesale rates while charging customers (supposed) "taxes" at retail.  If taken to the extreme, other businesses may decide to consider most of their charges to the public to be non-taxable services and only remit taxes on a small portion of their revenues.  Under this erroneous view, a Holiday Inn could decide to charge $100 dollars for the rental of a room, collect "taxes and fees" on the $100, but later remit Occupancy Taxes on a single dollar of that transaction and pocket the rest of the "taxes and fees" as a service fee.  This is not the law.  The law requires transparent tax administration and full payment of the Occupancy Tax on "gross" or retail amounts.

55.     When Marriott rents a room on its online website, it charges and collects and remits Occupancy Taxes based on the retail rate.  When Expedia rents a Marriott room on its website, it charges and collects Occupancy Taxes at or above the retail rate, but remits on a lesser wholesale rate.  This is fundamentally wrong.  The rule of law must be imposed and these Defendants must be brought in line with other renters of hotel rooms, so that Baltimore County's revenues can be returned to the proper levels under the law.

56.     Baltimore County seeks a declaratory judgment against all Defendants finding Defendants' business practices as to the collection of the Occupancy Taxes illegal, deceptive, and unlawful and in violation of the laws and ordinances designated herein.

57.     Further, Baltimore County seeks a declaratory judgment from the Court asking it to

declare the rights and obligations of the Defendants with respect to Baltimore County relating to their Occupancy Tax obligations under the Baltimore and Maryland sections cited herein.

58.   A justiciable controversy is stated herein concerning the Defendants Occupancy Tax liability.

59.   Such a declaratory judgment is proper under 28 U.S.C. § 2201.

### COUNT II: INJUNCTIVE RELIEF

60.   Baltimore County incorporates each of the above allegations by reference as if fully rewritten herein.

61.   As requested above under Count I, Baltimore County respectfully asks that the Court enjoin Defendants from further, future violation of the applicable Occupancy Tax laws and that Defendants be ordered to: (1) collect said taxes on the total room rental charge paid to them by the consumer (transient guest) to whom they rent rooms; (2) identify, categorize and quantify to Baltimore County the Occupancy Taxes due and being paid (3) and remit the proper amount of Occupancy Taxes due to Baltimore County.

### COUNT III: VIOLATIONS OF BALTIMORE COUNTY'S TRANSIENT OCCUPANCY TAX CODE

**(Against all Defendants)**

62.   Baltimore County incorporates each of the above allegations by reference as if fully rewritten herein.  To avoid redundancy, Plaintiff will not repeat here the Baltimore County and Maryland Code Sections already cited above and upon which this Count is based.

63.   In short, Defendants are remitting only part of the money due as Occupancy Taxes and defendants are deceptively hiding illegal profit streams under labels such as "taxes" or "taxes or fees" or "tax recovery charges."   Baltimore County seeks the restoration of

transparency as addressed in Count I above, and the payment of all Occupancy Tax monies that should have been paid to date based upon the retail rates Defendants charged consumers for the rental of hotel rooms in Baltimore County, along with all applicable penalties and interest.

## COUNT IV: CONVERSION

### (Against All Defendants)

64.     Baltimore County incorporates each of the above allegations by reference as if fully rewritten herein.

65.     At all times alleged herein, Baltimore County was and is the sole rightful owner of the Occupancy Taxes due and owing to it under the Baltimore County's Tax Code, related code sections, subsections, and county ordinances promulgated thereunder.

66.     At all times alleged herein, the Occupancy Tax monies due and owing to Baltimore County were in the possession and under the control of Defendants. Defendants have taken these monies for their own use and benefit, thereby permanently depriving Baltimore County of the use and benefit thereof.

67.     At all times alleged herein, Defendants acted willfully, wantonly, with oppression, and with a conscious disregard of the rights of Baltimore County, such that Baltimore County requests that the trier of fact, in the exercise of sound discretion, award Baltimore County additional damages for the sake of example and in sufficient amount to deter and punish Defendants for their conduct.

68.     As a direct and proximate result of Defendants' conduct, Baltimore County has, and will continue to, suffer damages in an amount to be determined according to proof at the time of trial.

## COUNT V: UNJUST ENRICHMENT/ASSUMPSIT

### (Against all Defendants)

69.     Baltimore County incorporates each of the above allegations by reference as if fully rewritten herein.

70.     By collecting Occupancy Taxes on the basis and upon the representation that said taxes are required by and for the benefit of Baltimore County but not remitting the full amount of taxes to Baltimore County, Defendants have been unjustly enriched. Under the principles of equity Defendants must be disgorged of said collected but un-remitted Occupancy Taxes and said taxes paid to Baltimore County.

## COUNT VI: IMPOSITION OF A CONSTRUCTIVE TRUST

### (Against All Defendants)

71.     Baltimore County incorporates each of the above allegations by reference as if fully rewritten herein.

72.     At all times alleged herein, Baltimore County's Occupancy Tax monies were in the possession and under the control of Defendants. Defendants have taken this property/money for their own use and benefit, thereby depriving Baltimore County of the use and benefit thereof. Baltimore County has been damaged by its failure to receive the Occupancy Tax monies.

73.     By virtue of Defendants' actions, Defendants hold these Occupancy Tax monies as constructive trustee for the benefit of the Baltimore County. Baltimore County requests an order that Defendants be directed to give possession thereof to Baltimore County.

## COUNT VII: DAMAGES

74.     Baltimore County incorporates each of the above allegations by reference as if

fully rewritten herein.

75.     Baltimore County requests the Court order Defendants to provide restitution to it and to disgorge the tax monies due and owing to the Baltimore County.

76.     Under Baltimore County Code § 11-4-404, Baltimore County is entitled to interest and civil penalties on the unpaid Occupancy Taxes and they are to be collected as part of the Tax itself.

77.     Baltimore County requests that it recover all penalties, interest, and reasonable and necessary attorneys' fees it is entitled to under the law and in equity.

78.     Baltimore County requests both prejudgment and post-judgment interest at the maximum rate allowed by law.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Baltimore County prays for the following judgment in its favor against Defendants:

i.      For judgment against Defendants and in favor of Baltimore County on all claims asserted in this Complaint;

ii.     For a declaratory judgment determining Defendants' business practices to be illegal, deceptive, unfair, and unlawful business practices;

iii.    For injunctive relief requiring Defendants' future compliance with Baltimore County's Occupancy Tax Code;

iv.     For payments of all Occupancy Tax monies due Baltimore County;

v.      For damages for the sake of example and in sufficient amount to deter and punish Defendants for their conduct;

vi.     For disgorgement and restitution plus interest due thereon at the legal rate and/or as established by Baltimore County's Occupancy Tax Code;

vii.     For payment of all monies being held by Defendants as constructive trustee for Baltimore County;

viii.     For pre-judgment and post-judgment interest to the extent allowed by law;

ix.     For penalties as allowed by law;

x.     For costs of this Action;

xi.     For reasonable and necessary attorney's fees incurred herein; and

xii.     For such other and further relief as this Court may deem appropriate.

**Plaintiff hereby demands trial by jury on all issues.**

**BALTIMORE COUNTY OFFICE OF LAW**

/s/

BY:_____

John E. Beverungen (Bar No. 09458)
County Attorney

Baltimore County Office of Law
400 Washington Avenue
Towson, Maryland 21204
410-887-4420

**CRONGEYER LAW FIRM, PC**

JOHN W. CRONGEYER, M.D.
Georgia Bar No. 197267
(Pro HacVice Motion To Be Filed)

2170 Defoor Hills Rd.
Atlanta, GA 30309
Telephone: (404) 542-6205
Facsimile: (404) 872-3745

**LAMAR ARCHER & COFRIN, LLP**

DAVID W. DAVENPORT
Georgia Bar No. 205962
(Pro HacVice Motion To Be Filed)

50 Hurt Plaza, S.E., Suite 900
Atlanta, GA  30303
Telephone:  (404) 577-1777
Facsimile:  (404) 577-9490

**THE LAW PRACTICE OF
KEVIN A. ROSS, LLP**

Kevin A. Ross
Georgia State Bar No. 675184
(Pro HacVice Motion To Be Filed)

3290 Northside Parkway
Atlanta, GA 30327
Telephone:  404-841-7835
Facsimile:  404-841-7801